**Exhibit Cover Sheet**

**Party submitting: <u>NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING</u> Ex.#**
**<u>2</u>**

**Admitted: Yes or No (circle one)**

**Debtor:  <u>Samuel Fitzgerald Worrell</u>**

**Case No.:  21-20622-PDR**

**Nature of Hearing**

**Docket No:  [DE-26]**

**<u>Secured Creditor's Motion for Relief from Stay</u>**

**United States Bankruptcy Court**

**Southern District of Florida**

**Dated _____ , 2022.**

**By:_____, Deputy Clerk**

**Fill in this information to identify the case:**

Debtor 1 _Samuel Fitzgerald Worrell_____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the SOUTHERN District of FLORIDA (Fort Lauderdale)

Case number _21-20622-PDR_

## Official Form 410
# Proof of Claim
04/19

**Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. | What is the current creditor? | NewRez LLC d/b/a Shellpoint Mortgage Servicing |
| --- | --- | --- |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |
| | | _____ |

| 2. | Has this claim been acquired from someone else | [X] No |
| --- | --- | --- |
| | | [ ] Yes.  From whom? _____ |

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002 (g)

**Where should notices to the creditor be sent?**

NewRez LLC d/b/a Shellpoint Mortgage Servicing
Name

P.O. Box 10826
Number          Street

Greenville, SC  29603
City               State          ZIP Code

Contact phone  800-365-7107

Contact email  mtgbk@shellpointmtg.com

**Where should payments to the creditor be sent?** (if different)

NewRez LLC d/b/a Shellpoint Mortgage Servicing
Name

P.O. Box 10826
Number          Street

Greenville  SC  29603
City               State          ZIP Code

Contact phone  800-365-7107

Contact email  mtgbk@shellpointmtg.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

__ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

| 4. | Does this claim amend one already filed? | [X] No |
| --- | --- | --- |
| | | [ ] Yes.  Claim number on court claim registry (if known) _____    Filed on _____ MM/DD/YYYY |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | [X] No |
| --- | --- | --- |
| | | [ ] Yes.  Who made the earlier filing? _____ |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. | Do you have any number you use to identify the debtor | [ ] No<br>[X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>7389</u> |
|---|---|---|

| 7. | How much is the claim? | $ __598,576.01__ | Does this amount include interest or other charges?<br>[ ] No<br>[X] Yes.   Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(a) |
|---|---|---|---|

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>___MONEY LOANED_____ |
|---|---|---|

| 9. | Is all or part of the claim secured? | [ ] No<br>[X] Yes   The claim is secured by a lien on property.<br><br>**Nature of property:**<br><br>[X] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this Proof of Claim.<br><br>[ ]   Motor vehicle<br>[ ]   Other. Describe:   __7420 NW 41ST CT, LAUDERHILL, FL 33319__<br><br>**Basis for perfection**:   __Mortgage/Deed of Trust_____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $<br><br>**Amount of the claim that is secured:**   $ <u>598,576.01</u><br><br>**Amount of the claim that is unsecured:** $_____   (The sum of the secured and unsecured amounts should match the amount in line 7)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $197,844.29<br><br>**Annual Interest Rate** (when case was filed)<u>4.5000</u>%<br><br>[X]   Fixed<br>[ ]   Variable |
|---|---|---|

| 10. | Is this claim based on a lease? | [X]   No<br>[ ]   Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____ |
|---|---|---|

| 11. | Does this claim involve a right to setoff? | [X]   No<br>[ ]   Yes. Identify the property _____ |
|---|---|---|

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. §507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | [X] No<br>[ ] Yes. Check one: | Amount entitled to priority |
|---|---|---|---|
| | | [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | $ |
| | | [ ] Up to $3,025* of deposits toward purchase, lease or rental of property or services for personal, family, or household use. 11 U.S.C. §507(a)(7). | $ |
| | | [ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. §507(a)(4). | $ |
| | | [ ] Taxes or penalties owed to governmental units. 11 U.S.C. §507(a)(8). | $ |
| | | [ ] Contributions to an employee benefit plan. 11 U.S.C. §507(a)(5). | $ |
| | | [ ] Other. Specify subsection of 11 U.S.C. §507(a)(___) that applies. | $ |
| | | * Amount are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment | |

---

**Part 3:    Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box

[ ]  I am the creditor.
[X]  I am the creditor's attorney or authorized agent.
[ ]  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
[ ]  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3004.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculation the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/11/2022
                  MM/DD/YYYY

/s/ Keith Labell
    Signature

**Print the name of the person who is completing and signing this claim:**

Keith Labell
Authorized Agent for Secured Creditor
Robertson, Anschutz, Schneid, Crane & Partners, PLLC
6409 Congress Avenue, Suite 100
Boca Raton, FL, 33487
470-321-7112

NewRez LLC DBA Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this proof of claim for NRM. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of NewRez LLC d/b/a Shellpoint Mortgage Servicing.

**Mortgage Proof of Claim Attachment**

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | | Part 3: Arrearage as of Date of the Petition | | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|---|---|
| Case number: | 21-20622-PDR | Principal balance: | | $302,331.95 | Principal & interest due: | | $107,784.44 | Principal & interest: | $1,364.36 |
| Debtor 1: | Samuel Fitzgerald Worrell | Interest due: | | $86,774.66 | Prepetition fees due: | | $13,535.20 | Monthly escrow: | $1,587.62 |
| Debtor 2: | | Fees, costs due: | | $13,535.20 | Escrow deficiency for funds advanced: | | $65,869.20 | Private mortgage insurance: | |
| | | Deferred Principal | | $130,065.00 | | | | | |
| Last 4 digits to identify: | 7389 | Escrow deficiency for funds advanced: | | $65,869.20 | Projected escrow shortage: | | $10,655.45 | Total monthly payment: | $2,951.98 |
| Creditor: | NewRez LLC d/b/a Shellpoint Mortgage Servicing | Less total funds on hand: | | $0.00 | Less funds on hand: | | $0.00 | | |
| Servicer: | NewRez LLC d/b/a Shellpoint Mortgage Servicing | Total debt: | | $598,576.01 | Total prepetition arrearage: | | $197,844.29 | | |
| Fixed accrual/daily simple interest/other: | Fixed | | | | | | | | |

**Part 5: Loan Payment History from First Date of Default**

| Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin. int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 01/01/15 | | | | Starting Balance | | | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 01/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $1,364.36 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 02/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $2,728.72 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 03/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $4,093.08 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 04/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $5,457.44 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 05/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $6,821.80 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 06/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $8,186.16 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 07/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $9,550.52 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 08/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $10,914.88 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 09/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $12,279.24 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 10/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $13,643.60 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 11/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $15,007.96 | | | | | | $303,245.83 | | ($13,156.69) | $0.00 | $0.00 |
| 11/11/15 | | | ($2,804.25) | County Tax Bill 1 | 01/01/15 | $15,007.96 | | | | ($2,804.25) | | $303,245.83 | | ($15,960.94) | $0.00 | $0.00 |
| 11/16/15 | | | ($245.54) | Escrow Disbursement | 01/01/15 | $15,007.96 | | | | ($245.54) | | $303,245.83 | | ($16,206.48) | $0.00 | $0.00 |
| 12/01/15 | $1,364.36 | | | Payment Due | 01/01/15 | $16,372.32 | | | | | | $303,245.83 | | ($16,206.48) | $0.00 | $0.00 |
| 12/10/15 | | | ($245.54) | Escrow Disbursement | 01/01/15 | $16,372.32 | | | | ($245.54) | | $303,245.83 | | ($16,452.02) | $0.00 | $0.00 |
| 12/28/15 | | | ($566.00) | Flood Disbursement | 01/01/15 | $16,372.32 | | | | ($566.00) | | $303,245.83 | | ($17,018.02) | $0.00 | $0.00 |
| 01/01/16 | $1,364.36 | | | Payment Due | 01/01/15 | $17,736.68 | | | | | | $303,245.83 | | ($17,018.02) | $0.00 | $0.00 |
| 01/13/16 | | | ($270.82) | Escrow Disbursement | 01/01/15 | $17,736.68 | | | | ($270.82) | | $303,245.83 | | ($17,288.84) | $0.00 | $0.00 |
| 01/19/16 | | | ($2,760.00) | Hazard Disbursement | 01/01/15 | $17,736.68 | | | | ($2,760.00) | | $303,245.83 | | ($20,048.84) | $0.00 | $0.00 |
| 02/01/16 | $1,364.36 | | | Payment Due | 01/01/15 | $19,101.04 | | | | | | $303,245.83 | | ($20,048.84) | $0.00 | $0.00 |
| 02/10/16 | | | ($270.82) | Escrow Disbursement | 01/01/15 | $19,101.04 | | | | ($270.82) | | $303,245.83 | | ($20,319.66) | $0.00 | $0.00 |
| 03/01/16 | $1,364.36 | | | Payment Due | 01/01/15 | $20,465.40 | | | | | | $303,245.83 | | ($20,319.66) | $0.00 | $0.00 |
| 03/17/16 | | | ($270.82) | Escrow Disbursement | 01/01/15 | $20,465.40 | | | | ($270.82) | | $303,245.83 | | ($20,590.48) | $0.00 | $0.00 |
| 04/01/16 | $1,364.36 | | | Payment Due | 01/01/15 | $21,829.76 | | | | | | $303,245.83 | | ($20,590.48) | $0.00 | $0.00 |

**Mortgage Proof of Claim Attachment**

**Mortgage Proof of Claim Attachment:** Additional Page

(12/15)

| Date | Contractual Payment Amount | Funds Received | Description | Due Date | Amount | | | | Principal Balance | | Fees/Charges | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/04/16 | | ($812.46) | FHA MI Disbursement | 01/01/15 | $21,829.76 | | ($812.46) | | $303,245.83 | ($21,402.94) | $0.00 | $0.00 |
| 04/04/16 | | $10,701.47 | Escrow Only Payment | 01/01/15 | $21,829.76 | | $10,701.47 | | $303,245.83 | ($10,701.47) | $0.00 | $0.00 |
| 04/05/16 | | $15.00 | Property Inspection Fee | 01/01/15 | $21,829.76 | | | $15.00 | $303,245.83 | ($10,701.47) | $15.00 | $0.00 |
| 04/05/16 | | $20.00 | Court Costs | 01/01/15 | $21,829.76 | | | $20.00 | $303,245.83 | ($10,701.47) | $35.00 | $0.00 |
| 04/05/16 | | $50.00 | Court Costs | 01/01/15 | $21,839.76 | | | $50.00 | $303,245.83 | ($10,701.47) | $85.00 | $0.00 |
| 04/05/16 | | $1,960.00 | FC Costs | 01/01/15 | $21,829.76 | | | $1,960.00 | $303,245.83 | ($10,701.47) | $2,045.00 | $0.00 |
| 04/05/16 | | $200.00 | FC Costs | 01/01/15 | $21,829.76 | | | $200.00 | $303,245.83 | ($10,701.47) | $2,245.00 | $0.00 |
| 04/05/16 | | $350.00 | FC Costs | 01/01/15 | $21,829.76 | | | $350.00 | $303,245.83 | ($10,701.47) | $2,595.00 | $0.00 |
| 04/05/16 | | $250.00 | FC Costs | 01/01/15 | $21,839.76 | | | $250.00 | $303,245.83 | ($10,701.47) | $2,845.00 | $0.00 |
| 04/05/16 | | $1,963.78 | Filing Cost | 01/01/15 | $21,829.76 | | | $1,963.78 | $303,245.83 | ($10,701.47) | $4,808.78 | $0.00 |
| 04/26/16 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $21,829.76 | | ($270.82) | | $303,245.83 | ($10,972.29) | $4,808.78 | $0.00 |
| 05/01/16 | $1,364.36 | | Payment Due | 01/01/15 | $23,194.12 | | | | $303,245.83 | ($10,972.29) | $4,808.78 | $0.00 |
| 05/05/16 | | $15.00 | Property Inspection Fee | 01/01/15 | $23,194.12 | | | $15.00 | $303,245.83 | ($10,972.29) | $4,823.78 | $0.00 |
| 05/23/16 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $23,194.12 | | ($270.82) | | $303,245.83 | ($11,243.11) | $4,823.78 | $0.00 |
| 06/01/16 | $1,364.36 | | Payment Due | 01/01/15 | $24,558.48 | | | | $303,245.83 | ($11,243.11) | $4,823.78 | $0.00 |
| 06/27/16 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $24,558.48 | | ($270.82) | | $303,245.83 | ($11,513.93) | $4,823.78 | $0.00 |
| 07/01/16 | $1,364.36 | | Payment Due | 01/01/15 | $25,922.84 | | | | $303,245.83 | ($11,513.93) | $4,823.78 | $0.00 |
| 07/07/16 | | $15.00 | Property Inspection Fee | 01/01/15 | $25,922.84 | | | $15.00 | $303,245.83 | ($11,513.93) | $4,838.78 | $0.00 |
| 07/25/16 | | ($2,708.20) | FHA MI Disbursement | 01/01/15 | $25,922.84 | | ($2,708.20) | | $303,245.83 | ($14,222.13) | $4,838.78 | $0.00 |
| 07/26/16 | | $2,708.20 | Escrow Only Payment | 01/01/15 | $25,922.84 | | $2,708.20 | | $303,245.83 | ($11,513.93) | $4,838.78 | $0.00 |
| 07/26/16 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $25,922.84 | | ($270.82) | | $303,245.83 | ($11,784.75) | $4,838.78 | $0.00 |
| 07/29/16 | | $355.00 | FC Costs | 01/01/15 | $25,922.84 | | | $355.00 | $303,245.83 | ($11,784.75) | $5,193.78 | $0.00 |
| 07/29/16 | | $215.00 | FC Costs | 01/01/15 | $25,922.84 | | | $215.00 | $303,245.83 | ($11,784.75) | $5,408.78 | $0.00 |
| 08/01/16 | $1,364.36 | | Payment Due | 01/01/15 | $27,287.20 | | | | $303,245.83 | ($11,784.75) | $5,408.78 | $0.00 |
| 08/11/16 | | $15.00 | Property Inspection Fee | 01/01/15 | $27,287.20 | | | $15.00 | $303,245.83 | ($11,784.75) | $5,423.78 | $0.00 |
| 08/23/16 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $27,287.20 | | ($270.82) | | $303,245.83 | ($12,055.57) | $5,423.78 | $0.00 |
| 09/01/16 | $1,364.36 | | Payment Due | 01/01/15 | $28,651.56 | | | | $303,245.83 | ($12,055.57) | $5,423.78 | $0.00 |
| 09/23/16 | | $215.00 | FC Costs | 01/01/15 | $28,651.56 | | | $215.00 | $303,245.83 | ($12,055.57) | $5,638.78 | $0.00 |
| 09/26/16 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $28,651.56 | | ($270.82) | | $303,245.83 | ($12,326.39) | $5,638.78 | $0.00 |
| 09/30/16 | | $15.00 | Property Inspection Fee | 01/01/15 | $28,651.56 | | | $15.00 | $303,245.83 | ($12,326.39) | $5,653.78 | $0.00 |
| 10/01/16 | $1,364.36 | | Payment Due | 01/01/15 | $30,015.92 | | | | $303,245.83 | ($12,326.39) | $5,653.78 | $0.00 |
| 10/10/16 | | $215.00 | FC Costs | 01/01/15 | $30,015.92 | | | $215.00 | $303,245.83 | ($12,326.39) | $5,868.78 | $0.00 |
| 10/10/16 | | $430.00 | FC Costs | 01/01/15 | $30,015.92 | | | $430.00 | $303,245.83 | ($12,326.39) | $6,298.78 | $0.00 |
| 10/10/16 | | $215.00 | FC Costs | 01/01/15 | $30,015.92 | | | $215.00 | $303,245.83 | ($12,326.39) | $6,513.78 | $0.00 |
| 10/26/16 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $30,015.92 | | ($270.82) | | $303,245.83 | ($12,597.21) | $6,513.78 | $0.00 |
| 11/01/16 | $1,364.36 | | Payment Due | 01/01/15 | $31,380.28 | | | | $303,245.83 | ($12,597.21) | $6,513.78 | $0.00 |
| 11/04/16 | | $430.00 | FC Costs | 01/01/15 | $31,380.28 | | | $430.00 | $303,245.83 | ($12,597.21) | $6,943.78 | $0.00 |
| 11/04/16 | | $295.40 | FC Costs | 01/01/15 | $31,380.28 | | | $295.40 | $303,245.83 | ($12,597.21) | $7,239.18 | $0.00 |
| 11/14/16 | | ($2,764.37) | County Tax Bill 1 | 01/01/15 | $31,380.28 | | ($2,764.37) | | $303,245.83 | ($15,361.58) | $7,239.18 | $0.00 |
| 11/17/16 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $31,380.28 | | ($270.82) | | $303,245.83 | ($15,632.40) | $7,239.18 | $0.00 |
| 12/01/16 | $1,364.36 | | Payment Due | 01/01/15 | $32,744.64 | | | | $303,245.83 | ($15,632.40) | $7,239.18 | $0.00 |
| 12/20/16 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $32,744.64 | | ($270.82) | | $303,245.83 | ($15,903.22) | $7,239.18 | $0.00 |
| 12/29/16 | | ($571.00) | Flood Disbursement | 01/01/15 | $32,744.64 | | ($571.00) | | $303,245.83 | ($16,474.22) | $7,239.18 | $0.00 |
| 01/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $34,109.00 | | | | $303,245.83 | ($16,474.22) | $7,239.18 | $0.00 |
| 01/09/17 | | ($2,944.00) | Hazard Disbursement | 01/01/15 | $34,109.00 | | ($2,944.00) | | $303,245.83 | ($19,418.22) | $7,239.18 | $0.00 |
| 01/19/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $34,109.00 | | ($270.82) | | $303,245.83 | ($19,689.04) | $7,239.18 | $0.00 |
| 02/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $35,473.36 | | | | $303,245.83 | ($19,689.04) | $7,239.18 | $0.00 |
| 02/16/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $35,473.36 | | ($270.82) | | $303,245.83 | ($19,959.86) | $7,239.18 | $0.00 |
| 03/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $36,837.72 | | | | $303,245.83 | ($19,959.86) | $7,239.18 | $0.00 |
| 03/17/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $36,837.72 | | ($270.82) | | $303,245.83 | ($20,230.68) | $7,239.18 | $0.00 |
| 04/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $38,202.08 | | | | $303,245.83 | ($20,230.68) | $7,239.18 | $0.00 |
| 04/19/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $38,202.08 | | ($270.82) | | $303,245.83 | ($20,501.50) | $7,239.18 | $0.00 |
| 05/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $39,566.44 | | | | $303,245.83 | ($20,501.50) | $7,239.18 | $0.00 |
| 05/18/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $39,566.44 | | ($270.82) | | $303,245.83 | ($20,772.32) | $7,239.18 | $0.00 |
| 06/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $40,930.80 | | | | $303,245.83 | ($20,772.32) | $7,239.18 | $0.00 |
| 06/16/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $40,930.80 | | ($270.82) | | $303,245.83 | ($21,043.14) | $7,239.18 | $0.00 |

**Mortgage Proof of Claim Attachment:** Additional Page

(12/15)

| Date | Amount | Amount | Description | Due Date | Amount | | | | | Principal Bal | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $42,295.16 | | | | | $303,245.83 | ($21,043.14) | $7,239.18 | $0.00 |
| 07/14/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $42,295.16 | | | ($270.82) | | $303,245.83 | ($21,313.96) | $7,239.18 | $0.00 |
| 08/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $43,659.52 | | | | | $303,245.83 | ($21,313.96) | $7,239.18 | $0.00 |
| 08/14/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $43,659.52 | | | ($270.82) | | $303,245.83 | ($21,584.78) | $7,239.18 | $0.00 |
| 08/25/17 | | $250.00 | FC Costs | 01/01/15 | $43,659.52 | | | | $250.00 | $303,245.83 | ($21,584.78) | $7,489.18 | $0.00 |
| 08/25/17 | | $250.00 | FC Costs | 01/01/15 | $43,659.52 | | | | $250.00 | $303,245.83 | ($21,584.78) | $7,739.18 | $0.00 |
| 08/25/17 | | $250.00 | FC Costs | 01/01/15 | $43,659.52 | | | | $250.00 | $303,245.83 | ($21,584.78) | $7,989.18 | $0.00 |
| 09/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $45,023.88 | | | | | $303,245.83 | ($21,584.78) | $7,989.18 | $0.00 |
| 10/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $46,388.24 | | | | | $303,245.83 | ($21,584.78) | $7,989.18 | $0.00 |
| 10/17/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $46,388.24 | | | ($270.82) | | $303,245.83 | ($21,855.60) | $7,989.18 | $0.00 |
| 11/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $47,752.60 | | | | | $303,245.83 | ($21,855.60) | $7,989.18 | $0.00 |
| 11/13/17 | | ($2,887.42) | County Tax Bill 1 | 01/01/15 | $47,752.60 | | | ($2,887.42) | | $303,245.83 | ($24,743.02) | $7,989.18 | $0.00 |
| 11/20/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $47,752.60 | | | ($270.82) | | $303,245.83 | ($25,013.84) | $7,989.18 | $0.00 |
| 12/01/17 | $1,364.36 | | Payment Due | 01/01/15 | $49,116.96 | | | | | $303,245.83 | ($25,013.84) | $7,989.18 | $0.00 |
| 12/14/17 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $49,116.96 | | | ($270.82) | | $303,245.83 | ($25,284.66) | $7,989.18 | $0.00 |
| 12/29/17 | | ($571.00) | Flood Disbursement | 01/01/15 | $49,116.96 | | | ($571.00) | | $303,245.83 | ($25,855.66) | $7,989.18 | $0.00 |
| 01/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $50,481.32 | | | | | $303,245.83 | ($25,855.66) | $7,989.18 | $0.00 |
| 01/11/18 | | ($3,082.00) | Hazard Disbursement | 01/01/15 | $50,481.32 | | | ($3,082.00) | | $303,245.83 | ($28,937.66) | $7,989.18 | $0.00 |
| 01/16/18 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $50,481.32 | | | ($270.82) | | $303,245.83 | ($29,208.48) | $7,989.18 | $0.00 |
| 01/29/18 | | $250.00 | FC Costs | 01/01/15 | $50,481.32 | | | | $250.00 | $303,245.83 | ($29,208.48) | $8,239.18 | $0.00 |
| 02/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $51,845.68 | | | | | $303,245.83 | ($29,208.48) | $8,239.18 | $0.00 |
| 02/14/18 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $51,845.68 | | | ($270.82) | | $303,245.83 | ($29,479.30) | $8,239.18 | $0.00 |
| 03/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $53,210.04 | | | | | $303,245.83 | ($29,479.30) | $8,239.18 | $0.00 |
| 03/16/18 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $53,210.04 | | | ($270.82) | | $303,245.83 | ($29,750.12) | $8,239.18 | $0.00 |
| 04/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $54,574.40 | | | | | $303,245.83 | ($29,750.12) | $8,239.18 | $0.00 |
| 04/11/18 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $54,574.40 | | | ($270.82) | | $303,245.83 | ($30,020.94) | $8,239.18 | $0.00 |
| 04/16/18 | | $15.00 | Property Inspection Fee | 01/01/15 | $54,574.40 | | | | $15.00 | $303,245.83 | ($30,020.94) | $8,254.18 | $0.00 |
| 04/18/18 | | $250.00 | FC Costs | 01/01/15 | $54,574.40 | | | | $250.00 | $303,245.83 | ($30,020.94) | $8,504.18 | $0.00 |
| 04/18/18 | | $250.00 | FC Costs | 01/01/15 | $54,574.40 | | | | $250.00 | $303,245.83 | ($30,020.94) | $8,754.18 | $0.00 |
| 04/30/18 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $54,574.40 | | | ($270.82) | | $303,245.83 | ($30,291.76) | $8,754.18 | $0.00 |
| 05/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $55,938.76 | | | | | $303,245.83 | ($30,291.76) | $8,754.18 | $0.00 |
| 05/16/18 | | $15.00 | Property Inspection Fee | 01/01/15 | $55,938.76 | | | | $15.00 | $303,245.83 | ($30,291.76) | $8,769.18 | $0.00 |
| 06/01/18 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $55,938.76 | | | ($270.82) | | $303,245.83 | ($30,562.58) | $8,769.18 | $0.00 |
| 06/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $57,303.12 | | | | | $303,245.83 | ($30,562.58) | $8,769.18 | $0.00 |
| 07/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $58,667.48 | | | | | $303,245.83 | ($30,562.58) | $8,769.18 | $0.00 |
| 07/12/18 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $58,667.48 | | | ($270.82) | | $303,245.83 | ($30,833.40) | $8,769.18 | $0.00 |
| 07/13/18 | | $545.87 | FC Costs | 01/01/15 | $58,667.48 | | | | $545.87 | $303,245.83 | ($30,833.40) | $9,315.05 | $0.00 |
| 08/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $60,031.84 | | | | | $303,245.83 | ($30,833.40) | $9,315.05 | $0.00 |
| 09/01/18 | | $70.00 | FC Costs | 01/01/15 | $60,031.84 | | | | $70.00 | $303,245.83 | ($30,833.40) | $9,385.05 | $0.00 |
| 09/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $61,396.20 | | | | | $303,245.83 | ($30,833.40) | $9,385.05 | $0.00 |
| 09/04/18 | | $70.00 | FC Costs | 01/01/15 | $61,396.20 | | | | $70.00 | $303,245.83 | ($30,833.40) | $9,455.05 | $0.00 |
| 10/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $62,760.56 | | | | | $303,245.83 | ($30,833.40) | $9,455.05 | $0.00 |
| 10/03/18 | | $245.00 | Adv/Publishing Fee | 01/01/15 | $62,760.56 | | | | $245.00 | $303,245.83 | ($30,833.40) | $9,700.05 | $0.00 |
| 10/03/18 | | $62.10 | FC Costs | 01/01/15 | $62,760.56 | | | | $62.10 | $303,245.83 | ($30,833.40) | $9,762.15 | $0.00 |
| 11/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $64,124.92 | | | | | $303,245.83 | ($30,833.40) | $9,762.15 | $0.00 |
| 12/01/18 | $1,364.36 | | Payment Due | 01/01/15 | $65,489.28 | | | | | $303,245.83 | ($30,833.40) | $9,762.15 | $0.00 |
| 12/31/18 | | $0.82 | Interest on Escrow Payment | 01/01/15 | $65,489.28 | | | $0.82 | | $303,245.83 | ($30,832.58) | $9,762.15 | $0.00 |
| 01/01/19 | $1,364.36 | | Payment Due | 01/01/15 | $66,853.64 | | | | | $303,245.83 | ($30,832.58) | $9,762.15 | $0.00 |
| 01/11/19 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $66,853.64 | | | ($270.82) | | $303,245.83 | ($31,103.40) | $9,762.15 | $0.00 |
| 01/11/19 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $66,853.64 | | | ($270.82) | | $303,245.83 | ($31,374.22) | $9,762.15 | $0.00 |
| 01/11/19 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $66,853.64 | | | ($270.82) | | $303,245.83 | ($31,645.04) | $9,762.15 | $0.00 |
| 01/11/19 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $66,853.64 | | | ($270.82) | | $303,245.83 | ($31,915.86) | $9,762.15 | $0.00 |
| 01/11/19 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $66,853.64 | | | ($270.82) | | $303,245.83 | ($32,186.68) | $9,762.15 | $0.00 |
| 01/11/19 | | ($270.82) | FHA MI Disbursement | 01/01/15 | $66,853.64 | | | ($270.82) | | $303,245.83 | ($32,457.50) | $9,762.15 | $0.00 |
| 02/01/19 | $1,364.36 | | Payment Due | 01/01/15 | $68,218.00 | | | | | $303,245.83 | ($32,457.50) | $9,762.15 | $0.00 |
| 02/07/19 | | | Unapplied Payment | 01/01/15 | $68,218.00 | | | | $9,395.70 | $303,245.83 | ($32,457.50) | $9,762.15 | $9,395.70 |
| 02/07/19 | | $2,136.66 | Regular Payment | 01/01/15 | $66,853.64 | $227.19 | $1,137.17 | $772.30 | | $303,018.64 | ($31,685.20) | $9,762.15 | $9,395.70 |

**Mortgage Proof of Claim Attachment:** Additional Page

(12/15)

| Date | Pmt Due | Funds Recd | Description | Due Date | Amount | Principal | Interest | Escrow | Fees/Charges | Unapplied | Prin. Balance | Esc. Balance | Fees Balance | Unapplied Bal. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/07/19 | | | Unapplied Payment | 02/01/15 | $66,853.64 | | | | | ($8,546.64) | $303,018.64 | ($31,685.20) | $9,762.15 | $849.06 |
| 02/07/19 | | $2,136.66 | Regular Payment | 02/01/15 | $65,489.28 | $228.04 | $1,136.32 | $772.30 | | | $302,790.60 | ($30,912.90) | $9,762.15 | $849.06 |
| 02/07/19 | | $2,136.66 | Regular Payment | 03/01/15 | $64,124.92 | $228.90 | $1,135.46 | $772.30 | | | $302,561.70 | ($30,140.60) | $9,762.15 | $849.06 |
| 02/07/19 | | $2,136.66 | Regular Payment | 04/01/15 | $62,760.56 | $229.75 | $1,134.61 | $772.30 | | | $302,331.95 | ($29,368.30) | $9,762.15 | $849.06 |
| 02/18/19 | | ($270.82) | FHA MI Disbursement | 05/01/15 | $62,760.56 | | | ($270.82) | | | $302,331.95 | ($29,639.12) | $9,762.15 | $849.06 |
| 03/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $64,124.92 | | | | | | $302,331.95 | ($29,639.12) | $9,762.15 | $849.06 |
| 03/13/19 | | ($270.82) | FHA MI Disbursement | 05/01/15 | $64,124.92 | | | ($270.82) | | | $302,331.95 | ($29,909.94) | $9,762.15 | $849.06 |
| 04/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $65,489.28 | | | | | | $302,331.95 | ($29,909.94) | $9,762.15 | $849.06 |
| 04/16/19 | | ($270.25) | FHA MI Disbursement | 05/01/15 | $65,489.28 | | | ($270.25) | | | $302,331.95 | ($30,180.19) | $9,762.15 | $849.06 |
| 05/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $66,853.64 | | | | | | $302,331.95 | ($30,180.19) | $9,762.15 | $849.06 |
| 05/16/19 | | ($270.25) | FHA MI Disbursement | 05/01/15 | $66,853.64 | | | ($270.25) | | | $302,331.95 | ($30,450.44) | $9,762.15 | $849.06 |
| 05/20/19 | | $15.00 | Property Inspection Fee | 05/01/15 | $66,853.64 | | | | $15.00 | | $302,331.95 | ($30,450.44) | $9,777.15 | $849.06 |
| 06/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $68,218.00 | | | | | | $302,331.95 | ($30,450.44) | $9,777.15 | $849.06 |
| 06/11/19 | | $51.75 | FC Costs | 05/01/15 | $68,218.00 | | | | $51.75 | | $302,331.95 | ($30,450.44) | $9,828.90 | $849.06 |
| 06/11/19 | | $0.41 | FC Costs | 05/01/15 | $68,218.00 | | | | $0.41 | | $302,331.95 | ($30,450.44) | $9,829.31 | $849.06 |
| 06/18/19 | | ($270.25) | FHA MI Disbursement | 05/01/15 | $68,218.00 | | | ($270.25) | | | $302,331.95 | ($30,720.69) | $9,829.31 | $849.06 |
| 06/27/19 | | $15.00 | Property Inspection Fee | 05/01/15 | $68,218.00 | | | | $15.00 | | $302,331.95 | ($30,720.69) | $9,844.31 | $849.06 |
| 07/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $69,582.36 | | | | | | $302,331.95 | ($30,720.69) | $9,844.31 | $849.06 |
| 07/15/19 | | ($270.25) | FHA MI Disbursement | 05/01/15 | $69,582.36 | | | ($270.25) | | | $302,331.95 | ($30,990.94) | $9,844.31 | $849.06 |
| 07/19/19 | | $15.00 | Property Inspection Fee | 05/01/15 | $69,582.36 | | | | $15.00 | | $302,331.95 | ($30,990.94) | $9,859.31 | $849.06 |
| 08/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $70,946.72 | | | | | | $302,331.95 | ($30,990.94) | $9,859.31 | $849.06 |
| 08/12/19 | | ($270.25) | FHA MI Disbursement | 05/01/15 | $70,946.72 | | | ($270.25) | | | $302,331.95 | ($31,261.19) | $9,859.31 | $849.06 |
| 08/15/19 | | $15.00 | Property Inspection Fee | 05/01/15 | $70,946.72 | | | | $15.00 | | $302,331.95 | ($31,261.19) | $9,874.31 | $849.06 |
| 08/29/19 | | $72.45 | FC Costs | 05/01/15 | $70,946.72 | | | | $72.45 | | $302,331.95 | ($31,261.19) | $9,946.76 | $849.06 |
| 09/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $72,311.08 | | | | | | $302,331.95 | ($31,261.19) | $9,946.76 | $849.06 |
| 09/13/19 | | ($270.25) | FHA MI Disbursement | 05/01/15 | $72,311.08 | | | ($270.25) | | | $302,331.95 | ($31,531.44) | $9,946.76 | $849.06 |
| 09/18/19 | | $245.00 | FC Costs | 05/01/15 | $72,311.08 | | | | $245.00 | | $302,331.95 | ($31,531.44) | $10,191.76 | $849.06 |
| 10/01/19 | | ($98.74) | FC Costs | 05/01/15 | $72,311.08 | | | | ($98.74) | | $302,331.95 | ($31,531.44) | $10,093.02 | $849.06 |
| 10/01/19 | | | Unapplied Payment | 05/01/15 | $72,311.08 | | | | | ($98.74) | $302,331.95 | ($31,531.44) | $10,093.02 | $750.32 |
| 10/01/19 | | | Unapplied Payment | 05/01/15 | $72,311.08 | | | | | ($750.32) | $302,331.95 | ($31,531.44) | $10,093.02 | $0.00 |
| 10/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $73,675.44 | | | | | | $302,331.95 | ($31,531.44) | $10,093.02 | $0.00 |
| 10/11/19 | | ($270.25) | FHA MI Disbursement | 05/01/15 | $73,675.44 | | | ($270.25) | | | $302,331.95 | ($31,801.69) | $10,093.02 | $0.00 |
| 11/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $75,039.80 | | | | | | $302,331.95 | ($31,801.69) | $10,093.02 | $0.00 |
| 11/13/19 | | $15.00 | Property Inspection Fee | 05/01/15 | $75,039.80 | | | | $15.00 | | $302,331.95 | ($31,801.69) | $10,108.02 | $0.00 |
| 11/27/19 | | $1.23 | FC Costs | 05/01/15 | $75,039.80 | | | | $1.23 | | $302,331.95 | ($31,801.69) | $10,109.25 | $0.00 |
| 11/27/19 | | $150.00 | Proof of Claim Fee | 05/01/15 | $75,039.80 | | | | $150.00 | | $302,331.95 | ($31,801.69) | $10,259.25 | $0.00 |
| 11/29/19 | | ($270.25) | FHA MI Disbursement | 05/01/15 | $75,039.80 | | | ($270.25) | | | $302,331.95 | ($32,071.94) | $10,259.25 | $0.00 |
| 12/01/19 | $1,364.36 | | Payment Due | 05/01/15 | $76,404.16 | | | | | | $302,331.95 | ($32,071.94) | $10,259.25 | $0.00 |
| 12/12/19 | | ($270.25) | PMI Disbursement | 05/01/15 | $76,404.16 | | | ($270.25) | | | $302,331.95 | ($32,342.19) | $10,259.25 | $0.00 |
| 12/17/19 | | $15.00 | Property Inspection Fee | 05/01/15 | $76,404.16 | | | | $15.00 | | $302,331.95 | ($32,342.19) | $10,274.25 | $0.00 |
| 12/17/19 | | $51.75 | Filing Cost | 05/01/15 | $76,404.16 | | | | $51.75 | | $302,331.95 | ($32,342.19) | $10,326.00 | $0.00 |
| 01/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $77,768.52 | | | | | | $302,331.95 | ($32,342.19) | $10,326.00 | $0.00 |
| 01/16/20 | | $72.45 | FC Costs | 05/01/15 | $77,768.52 | | | | $72.45 | | $302,331.95 | ($32,342.19) | $10,398.45 | $0.00 |
| 01/27/20 | | $15.00 | Property Inspection Fee | 05/01/15 | $77,768.52 | | | | $15.00 | | $302,331.95 | ($32,342.19) | $10,413.45 | $0.00 |
| 01/28/20 | | ($6,177.16) | County Tax Bill 1 | 05/01/15 | $77,768.52 | | | ($6,177.16) | | | $302,331.95 | ($38,519.33) | $10,413.45 | $0.00 |
| 01/29/20 | | ($270.25) | PMI Disbursement | 05/01/15 | $77,768.52 | | | ($270.25) | | | $302,331.95 | ($38,789.60) | $10,413.45 | $0.00 |
| 02/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $79,132.88 | | | | | | $302,331.95 | ($38,789.60) | $10,413.45 | $0.00 |
| 02/03/20 | | $250.00 | Attorney Cost | 05/01/15 | $79,132.88 | | | | $250.00 | | $302,331.95 | ($38,789.60) | $10,663.45 | $0.00 |
| 02/03/20 | | $250.00 | Attorney Cost | 05/01/15 | $79,132.88 | | | | $250.00 | | $302,331.95 | ($38,789.60) | $10,913.45 | $0.00 |
| 02/17/20 | | $15.00 | Property Inspection Fee | 05/01/15 | $79,132.88 | | | | $15.00 | | $302,331.95 | ($38,789.60) | $10,928.45 | $0.00 |
| 02/17/20 | | $0.02 | Tax Refund | 05/01/15 | $79,132.88 | | | $0.02 | | | $302,331.95 | ($38,789.58) | $10,928.45 | $0.00 |
| 02/18/20 | | $245.00 | FC Costs | 05/01/15 | $79,132.88 | | | | $245.00 | | $302,331.95 | ($38,789.58) | $11,173.45 | $0.00 |
| 02/18/20 | | $51.75 | Filing Cost | 05/01/15 | $79,132.88 | | | | $51.75 | | $302,331.95 | ($38,789.58) | $11,225.20 | $0.00 |
| 02/27/20 | | $420.40 | Insurance Refund | 05/01/15 | $79,132.88 | | | $420.40 | | | $302,331.95 | ($38,369.18) | $11,225.20 | $0.00 |
| 02/27/20 | | $578.06 | Insurance Refund | 05/01/15 | $79,132.88 | | | $578.06 | | | $302,331.95 | ($37,791.12) | $11,225.20 | $0.00 |
| 03/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $80,497.24 | | | | | | $302,331.95 | ($37,791.12) | $11,225.20 | $0.00 |
| 03/23/20 | | ($270.25) | PMI Disbursement | 01/01/20 | $80,497.24 | | | ($270.25) | | | $302,331.95 | ($38,061.37) | $11,225.20 | $0.00 |

**Mortgage Proof of Claim Attachment:** Additional Page

(12/15)

| Date | Amount | Funds | Description | Date | Amount | | Amount | Amount | Principal | Balance | Escrow | Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/23/20 | | ($270.25) | PMI Disbursement | 02/01/20 | $80,497.24 | | ($270.25) | | $302,331.95 | ($38,331.62) | $11,225.20 | $0.00 |
| 03/24/20 | | ($270.25) | PMI Disbursement | 03/01/20 | $80,497.24 | | ($270.25) | | $302,331.95 | ($38,601.87) | $11,225.20 | $0.00 |
| 03/31/20 | | ($921.70) | Flood Disbursement | 03/17/20 | $80,497.24 | | ($921.70) | | $302,331.95 | ($39,523.57) | $11,225.20 | $0.00 |
| 03/31/20 | | ($1,213.13) | Hazard Disbursement | 03/25/20 | $80,497.24 | | ($1,213.13) | | $302,331.95 | ($40,736.70) | $11,225.20 | $0.00 |
| 04/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $81,861.60 | | | | $302,331.95 | ($40,736.70) | $11,225.20 | $0.00 |
| 04/15/20 | | $350.00 | Attorney Cost | 05/01/15 | $81,861.60 | | | $350.00 | $302,331.95 | ($40,736.70) | $11,575.20 | $0.00 |
| 04/22/20 | | ($270.25) | PMI Disbursement | 04/01/20 | $81,861.60 | | ($270.25) | | $302,331.95 | ($41,006.95) | $11,575.20 | $0.00 |
| 04/27/20 | | $250.00 | Proof of Claim Fee | 05/01/15 | $81,861.60 | | | $250.00 | $302,331.95 | ($41,006.95) | $11,825.20 | $0.00 |
| 04/27/20 | | $600.00 | Proof of Claim Fee | 05/01/15 | $81,861.60 | | | $600.00 | $302,331.95 | ($41,006.95) | $12,425.20 | $0.00 |
| 04/30/20 | | ($307.79) | Flood Disbursement | 04/17/20 | $81,861.60 | | ($307.79) | | $302,331.95 | ($41,314.74) | $12,425.20 | $0.00 |
| 04/30/20 | | ($405.13) | Hazard Disbursement | 04/25/20 | $81,861.60 | | ($405.13) | | $302,331.95 | ($41,719.87) | $12,425.20 | $0.00 |
| 05/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $83,225.96 | | | | $302,331.95 | ($41,719.87) | $12,425.20 | $0.00 |
| 05/07/20 | | $15.00 | Property Inspection Fee | 05/01/15 | $83,225.96 | | | $15.00 | $302,331.95 | ($41,719.87) | $12,440.20 | $0.00 |
| 05/07/20 | | $81.29 | Insurance Refund | 05/01/15 | $83,225.96 | | $81.29 | | $302,331.95 | ($41,638.58) | $12,440.20 | $0.00 |
| 06/01/20 | | ($312.09) | Flood Disbursement | 05/17/20 | $83,225.96 | | ($312.09) | | $302,331.95 | ($41,950.67) | $12,440.20 | $0.00 |
| 06/01/20 | | ($410.75) | Hazard Disbursement | 05/25/20 | $83,225.96 | | ($410.75) | | $302,331.95 | ($42,361.42) | $12,440.20 | $0.00 |
| 06/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $84,590.32 | | | | $302,331.95 | ($42,361.42) | $12,440.20 | $0.00 |
| 06/08/20 | | $15.00 | Property Inspection Fee | 05/01/15 | $84,590.32 | | | $15.00 | $302,331.95 | ($42,361.42) | $12,455.20 | $0.00 |
| 06/24/20 | | $205.00 | Attorney Cost | 05/01/15 | $84,590.32 | | | $205.00 | $302,331.95 | ($42,361.42) | $12,660.20 | $0.00 |
| 07/01/20 | | ($307.79) | Flood Disbursement | 06/17/20 | $84,590.32 | | ($307.79) | | $302,331.95 | ($42,669.21) | $12,660.20 | $0.00 |
| 07/01/20 | | ($405.13) | Hazard Disbursement | 06/25/20 | $84,590.32 | | ($405.13) | | $302,331.95 | ($43,074.34) | $12,660.20 | $0.00 |
| 07/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $85,954.68 | | | | $302,331.95 | ($43,074.34) | $12,660.20 | $0.00 |
| 07/10/20 | | ($188.96) | PMI Disbursement | 05/09/20 | $85,954.68 | | ($188.96) | | $302,331.95 | ($43,263.30) | $12,660.20 | $0.00 |
| 07/10/20 | | ($188.96) | PMI Disbursement | 06/09/20 | $85,954.68 | | ($188.96) | | $302,331.95 | ($43,452.26) | $12,660.20 | $0.00 |
| 07/10/20 | | ($188.96) | PMI Disbursement | 07/09/20 | $85,954.68 | | ($188.96) | | $302,331.95 | ($43,641.22) | $12,660.20 | $0.00 |
| 07/13/20 | | $15.00 | Property Inspection Fee | 05/01/15 | $85,954.68 | | | $15.00 | $302,331.95 | ($43,641.22) | $12,675.20 | $0.00 |
| 07/30/20 | | ($312.09) | Flood Disbursement | 07/17/20 | $85,954.68 | | ($312.09) | | $302,331.95 | ($43,953.31) | $12,675.20 | $0.00 |
| 07/30/20 | | ($410.75) | Hazard Disbursement | 07/25/20 | $85,954.68 | | ($410.75) | | $302,331.95 | ($44,364.06) | $12,675.20 | $0.00 |
| 08/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $87,319.04 | | | | $302,331.95 | ($44,364.06) | $12,675.20 | $0.00 |
| 08/05/20 | | $15.00 | Property Inspection Fee | 05/01/15 | $87,319.04 | | | $15.00 | $302,331.95 | ($44,364.06) | $12,690.20 | $0.00 |
| 08/20/20 | | ($37.53) | PMI Disbursement | 08/09/20 | $87,319.04 | | ($37.53) | | $302,331.95 | ($44,401.59) | $12,690.20 | $0.00 |
| 09/01/20 | | ($312.09) | Flood Disbursement | 08/17/20 | $87,319.04 | | ($312.09) | | $302,331.95 | ($44,713.68) | $12,690.20 | $0.00 |
| 09/01/20 | | ($410.75) | Hazard Disbursement | 08/25/20 | $87,319.04 | | ($410.75) | | $302,331.95 | ($45,124.43) | $12,690.20 | $0.00 |
| 09/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $88,683.40 | | | | $302,331.95 | ($45,124.43) | $12,690.20 | $0.00 |
| 09/09/20 | | $15.00 | Property Inspection Fee | 05/01/15 | $88,683.40 | | | $15.00 | $302,331.95 | ($45,124.43) | $12,705.20 | $0.00 |
| 09/11/20 | | $37.53 | Insurance Refund | 05/01/15 | $88,683.40 | | $37.53 | | $302,331.95 | ($45,086.90) | $12,705.20 | $0.00 |
| 09/30/20 | | ($307.79) | Flood Disbursement | 09/17/20 | $88,683.40 | | ($307.79) | | $302,331.95 | ($45,394.69) | $12,705.20 | $0.00 |
| 09/30/20 | | ($405.13) | Hazard Disbursement | 09/25/20 | $88,683.40 | | ($405.13) | | $302,331.95 | ($45,799.82) | $12,705.20 | $0.00 |
| 10/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $90,047.76 | | | | $302,331.95 | ($45,799.82) | $12,705.20 | $0.00 |
| 10/07/20 | | ($54.50) | PMI Disbursement | 10/07/20 | $90,047.76 | | ($54.50) | | $302,331.95 | ($45,854.32) | $12,705.20 | $0.00 |
| 10/15/20 | | ($215.75) | PMI Disbursement | 10/16/20 | $90,047.76 | | ($215.75) | | $302,331.95 | ($46,070.07) | $12,705.20 | $0.00 |
| 10/30/20 | | ($312.09) | Flood Disbursement | 10/17/20 | $90,047.76 | | ($312.09) | | $302,331.95 | ($46,382.16) | $12,705.20 | $0.00 |
| 10/30/20 | | ($410.75) | Hazard Disbursement | 10/25/20 | $90,047.76 | | ($410.75) | | $302,331.95 | ($46,792.91) | $12,705.20 | $0.00 |
| 11/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $91,412.12 | | | | $302,331.95 | ($46,792.91) | $12,705.20 | $0.00 |
| 11/11/20 | | ($6,726.89) | County Tax Bill 1 | 11/30/20 | $91,412.12 | | ($6,726.89) | | $302,331.95 | ($53,519.80) | $12,705.20 | $0.00 |
| 11/23/20 | | $15.00 | Property Inspection Fee | 05/01/15 | $91,412.12 | | | $15.00 | $302,331.95 | ($53,519.80) | $12,720.20 | $0.00 |
| 11/30/20 | | ($270.25) | PMI Disbursement | 11/01/20 | $91,412.12 | | ($270.25) | | $302,331.95 | ($53,790.05) | $12,720.20 | $0.00 |
| 12/01/20 | | ($307.79) | Flood Disbursement | 11/17/20 | $91,412.12 | | ($307.79) | | $302,331.95 | ($54,097.84) | $12,720.20 | $0.00 |
| 12/01/20 | | ($405.13) | Hazard Disbursement | 11/25/20 | $91,412.12 | | ($405.13) | | $302,331.95 | ($54,502.97) | $12,720.20 | $0.00 |
| 12/01/20 | $1,364.36 | | Payment Due | 05/01/15 | $92,776.48 | | | | $302,331.95 | ($54,502.97) | $12,720.20 | $0.00 |
| 12/29/20 | | ($270.25) | PMI Disbursement | 12/01/20 | $92,776.48 | | ($270.25) | | $302,331.95 | ($54,773.22) | $12,720.20 | $0.00 |
| 01/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $94,140.84 | | | | $302,331.95 | ($54,773.22) | $12,720.20 | $0.00 |
| 01/05/21 | | ($312.09) | Flood Disbursement | 12/17/20 | $94,140.84 | | ($312.09) | | $302,331.95 | ($55,085.31) | $12,720.20 | $0.00 |
| 01/05/21 | | ($410.75) | Hazard Disbursement | 12/25/20 | $94,140.84 | | ($410.75) | | $302,331.95 | ($55,496.06) | $12,720.20 | $0.00 |
| 01/22/21 | | ($810.75) | PMI Disbursement | 01/01/21 | $94,140.84 | | ($810.75) | | $302,331.95 | ($56,306.81) | $12,720.20 | $0.00 |
| 02/01/21 | | ($312.09) | Flood Disbursement | 01/17/21 | $94,140.84 | | ($312.09) | | $302,331.95 | ($56,618.90) | $12,720.20 | $0.00 |
| 02/01/21 | | ($410.75) | Hazard Disbursement | 01/25/21 | $94,140.84 | | ($410.75) | | $302,331.95 | ($57,029.65) | $12,720.20 | $0.00 |

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Date | Payment | Amount | Description | Date | Balance | | Applied | Fee | | Running Balance | Fees | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $95,505.20 | | | | $302,331.95 | ($57,029.65) | $12,720.20 | $0.00 |
| 02/25/21 | | ($270.25) | PMI Disbursement | 02/01/21 | $95,505.20 | | ($270.25) | | $302,331.95 | ($57,299.90) | $12,720.20 | $0.00 |
| 03/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $96,869.56 | | | | $302,331.95 | ($57,299.90) | $12,720.20 | $0.00 |
| 03/03/21 | | ($287.27) | Flood Disbursement | 02/17/21 | $96,869.56 | | ($287.27) | | $302,331.95 | ($57,587.17) | $12,720.20 | $0.00 |
| 03/03/21 | | ($378.12) | Hazard Disbursement | 02/25/21 | $96,869.56 | | ($378.12) | | $302,331.95 | ($57,965.29) | $12,720.20 | $0.00 |
| 03/10/21 | | $15.00 | Property Inspection Fee | 05/01/15 | $96,869.56 | | | $15.00 | $302,331.95 | ($57,965.29) | $12,735.20 | $0.00 |
| 03/24/21 | | ($270.25) | PMI Disbursement | 03/01/21 | $96,869.56 | | ($270.25) | | $302,331.95 | ($58,235.54) | $12,735.20 | $0.00 |
| 03/31/21 | | ($301.04) | Flood Disbursement | 03/17/21 | $96,869.56 | | ($301.04) | | $302,331.95 | ($58,536.58) | $12,735.20 | $0.00 |
| 03/31/21 | | ($410.75) | Hazard Disbursement | 03/25/21 | $96,869.56 | | ($410.75) | | $302,331.95 | ($58,947.33) | $12,735.20 | $0.00 |
| 04/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $98,233.92 | | | | $302,331.95 | ($58,947.33) | $12,735.20 | $0.00 |
| 04/06/21 | | $15.00 | Property Inspection Fee | 05/01/15 | $98,233.92 | | | $15.00 | $302,331.95 | ($58,947.33) | $12,750.20 | $0.00 |
| 04/19/21 | | ($270.25) | PMI Disbursement | 04/01/21 | $98,233.92 | | ($270.25) | | $302,331.95 | ($59,217.58) | $12,750.20 | $0.00 |
| 04/30/21 | | ($307.79) | Flood Disbursement | 04/17/21 | $98,233.92 | | ($307.79) | | $302,331.95 | ($59,525.37) | $12,750.20 | $0.00 |
| 04/30/21 | | ($405.13) | Hazard Disbursement | 04/25/21 | $98,233.92 | | ($405.13) | | $302,331.95 | ($59,930.50) | $12,750.20 | $0.00 |
| 05/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $99,598.28 | | | | $302,331.95 | ($59,930.50) | $12,750.20 | $0.00 |
| 05/04/21 | | $15.00 | Property Inspection Fee | 05/01/15 | $99,598.28 | | | $15.00 | $302,331.95 | ($59,930.50) | $12,765.20 | $0.00 |
| 05/18/21 | | ($270.25) | PMI Disbursement | 05/01/21 | $99,598.28 | | ($270.25) | | $302,331.95 | ($60,200.75) | $12,765.20 | $0.00 |
| 06/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $100,962.64 | | | | $302,331.95 | ($60,200.75) | $12,765.20 | $0.00 |
| 06/02/21 | | ($312.09) | Flood Disbursement | 05/17/21 | $100,962.64 | | ($312.09) | | $302,331.95 | ($60,512.84) | $12,765.20 | $0.00 |
| 06/02/21 | | ($410.75) | Hazard Disbursement | 05/25/21 | $100,962.64 | | ($410.75) | | $302,331.95 | ($60,923.59) | $12,765.20 | $0.00 |
| 06/08/21 | | $15.00 | Property Inspection Fee | 05/01/15 | $100,962.64 | | | $15.00 | $302,331.95 | ($60,923.59) | $12,780.20 | $0.00 |
| 06/15/21 | | ($270.25) | PMI Disbursement | 06/01/21 | $100,962.64 | | ($270.25) | | $302,331.95 | ($61,193.84) | $12,780.20 | $0.00 |
| 06/30/21 | | ($307.79) | Flood Disbursement | 06/17/21 | $100,962.64 | | ($307.79) | | $302,331.95 | ($61,501.63) | $12,780.20 | $0.00 |
| 06/30/21 | | ($405.13) | Hazard Disbursement | 06/25/21 | $100,962.64 | | ($405.13) | | $302,331.95 | ($61,906.76) | $12,780.20 | $0.00 |
| 07/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $102,327.00 | | | | $302,331.95 | ($61,906.76) | $12,780.20 | $0.00 |
| 07/02/21 | | $15.00 | Property Inspection Fee | 05/01/15 | $102,327.00 | | | $15.00 | $302,331.95 | ($61,906.76) | $12,795.20 | $0.00 |
| 07/20/21 | | ($270.25) | PMI Disbursement | 07/01/21 | $102,327.00 | | ($270.25) | | $302,331.95 | ($62,177.01) | $12,795.20 | $0.00 |
| 08/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $103,691.36 | | | | $302,331.95 | ($62,177.01) | $12,795.20 | $0.00 |
| 08/02/21 | | $15.00 | Property Inspection Fee | 05/01/15 | $103,691.36 | | | $15.00 | $302,331.95 | ($62,177.01) | $12,810.20 | $0.00 |
| 08/03/21 | | ($312.09) | Flood Disbursement | 07/17/21 | $103,691.36 | | ($312.09) | | $302,331.95 | ($62,489.10) | $12,810.20 | $0.00 |
| 08/03/21 | | ($410.75) | Hazard Disbursement | 07/25/21 | $103,691.36 | | ($410.75) | | $302,331.95 | ($62,899.85) | $12,810.20 | $0.00 |
| 08/13/21 | | ($270.25) | PMI Disbursement | 08/01/21 | $103,691.36 | | ($270.25) | | $302,331.95 | ($63,170.10) | $12,810.20 | $0.00 |
| 09/01/21 | | $15.00 | Property Inspection Fee | 05/01/15 | $103,691.36 | | | $15.00 | $302,331.95 | ($63,170.10) | $12,825.20 | $0.00 |
| 09/01/21 | | ($312.09) | Flood Disbursement | 08/17/21 | $103,691.36 | | ($312.09) | | $302,331.95 | ($63,482.19) | $12,825.20 | $0.00 |
| 09/01/21 | | ($410.75) | Hazard Disbursement | 08/25/21 | $103,691.36 | | ($410.75) | | $302,331.95 | ($63,892.94) | $12,825.20 | $0.00 |
| 09/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $105,055.72 | | | | $302,331.95 | ($63,892.94) | $12,825.20 | $0.00 |
| 09/09/21 | | ($270.25) | PMI Disbursement | 09/01/21 | $105,055.72 | | ($270.25) | | $302,331.95 | ($64,163.19) | $12,825.20 | $0.00 |
| 09/30/21 | | ($307.79) | Flood Disbursement | 09/17/21 | $105,055.72 | | ($307.79) | | $302,331.95 | ($64,470.98) | $12,825.20 | $0.00 |
| 09/30/21 | | ($405.13) | Hazard Disbursement | 09/25/21 | $105,055.72 | | ($405.13) | | $302,331.95 | ($64,876.11) | $12,825.20 | $0.00 |
| 10/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $106,420.08 | | | | $302,331.95 | ($64,876.11) | $12,825.20 | $0.00 |
| 10/08/21 | | $15.00 | Property Inspection Fee | 05/01/15 | $106,420.08 | | | $15.00 | $302,331.95 | ($64,876.11) | $12,840.20 | $0.00 |
| 10/13/21 | | ($270.25) | PMI Disbursement | 10/01/21 | $106,420.08 | | ($270.25) | | $302,331.95 | ($65,146.36) | $12,840.20 | $0.00 |
| 10/20/21 | | $250.00 | Attorney Cost | 05/01/15 | $106,420.08 | | | $250.00 | $302,331.95 | ($65,146.36) | $13,090.20 | $0.00 |
| 11/01/21 | | $15.00 | Property Inspection Fee | 05/01/15 | $106,420.08 | | | $15.00 | $302,331.95 | ($65,146.36) | $13,105.20 | $0.00 |
| 11/01/21 | | ($312.09) | Flood Disbursement | 10/17/21 | $106,420.08 | | ($312.09) | | $302,331.95 | ($65,458.45) | $13,105.20 | $0.00 |
| 11/01/21 | | ($410.75) | Hazard Disbursement | 10/25/21 | $106,420.08 | | ($410.75) | | $302,331.95 | ($65,869.20) | $13,105.20 | $0.00 |
| 11/01/21 | $1,364.36 | | Payment Due | 05/01/15 | $107,784.44 | | | | $302,331.95 | ($65,869.20) | $13,105.20 | $0.00 |
| 11/05/21 | | $430.00 | Attorney Cost | 05/01/15 | $107,784.44 | | | $430.00 | $302,331.95 | ($65,869.20) | $13,535.20 | $0.00 |
| 11/05/21 | | | BK Filed | 05/01/15 | $107,784.44 | | | | $302,331.95 | ($65,869.20) | $13,535.20 | $0.00 |

# shellpoint
**A DIVISION OF newrez**

Shellpoint Mortgage Servicing
Servicing
PO Box 10826
Greenville, SC  29603 0826
For Inquiries:  (800) 365-7107

SAMUEL H WORRELL
DONNA L WORRELL
7420 NW 41st Ct
LAUDERHILL FL  33319

Analysis Date:                          November 05, 2021
Loan: ████████

Property Address:
7420 NW 41ST CT
LAUDERHILL, FL  33319

## Annual Escrow Account Disclosure Statement - Account History

The following is an overview of your escrow account with Shellpoint Mortgage Servicing. It contains the history of escrow payments made on your behalf in the prior year, and a snapshot of the anticipated disbursements for the coming year. Any potential adjustments due to increases or decreases with your escrow items may affect your monthly escrow payment If your escrow payment increases, your monthly payment will also increase. If the escrow payment decreases, your mortgage payment will decrease.

| Payment Information | Contractual | Effective Dec 01, 2021 |
|---|---|---|
| P & I Pmt: | $1,364.36 | $1,364.36 |
| Escrow Pmt: | $0.00 | $1,587.62 |
| Other Funds Pmt: | $0.00 | $0.00 |
| Asst. Pmt (-): | $0.00 | $0.00 |
| Reserve Acct Pmt: | $0.00 | $0.00 |
| Total Payment | $1,364.36 | $2,951.98 |

| Prior Esc Pmt | March 01, 2021 |
|---|---|
| P & I Pmt: | $1,364.36 |
| Escrow Pmt: | $4,082.03 |
| Other Funds Pmt: | $0.00 |
| Asst. Pmt (-): | $0.00 |
| Resrv Acct Pmt: | $0.00 |
| Total Payment | $5,446.39 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | May 01, 2015 |
| Escrow Balance: | $0.00 |
| Anticipated Pmts to Escrow: | $0.00 |
| Anticipated Pmts from Escrow (-): | $0.00 |
| Anticipated Escrow Balance: | $0.00 |

| Shortage/Overage Information | Effective Dec 01, 2021 |
|---|---|
| Upcoming Total Annual Bills | $27,072.15 |
| Required Cushion | $2,634.74 |
| Required Starting Balance | $10,655.45 |
| Escrow Shortage | -$10,655.45 |
| Surplus | $0.00 |

**Cushion Calculation:** Because Shellpoint Mortgage Servicing does not set your tax amounts or insurance premiums, your escrow balance contains a cushion of 2,634.74. A cushion is an additional amount of funds held in your escrow in order to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs. Your lowest monthly balance should not be below 3,175.24 or 1/6 of the anticipated payment from the account.

This is a statement of actual activity in your escrow account from Mar 2021 to Nov 2021.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Date | Payments to Escrow Anticipated | Actual | Payments From Escrow Anticipated | Actual | | Description | Escrow Balance Required | Actual |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Starting Balance | 4,248.59 | (57,299.90) |
| Mar 2021 | 2,094.16 | | 312.09 | 287.27 | * | Lender Placed Flood | 6,030.66 | (57,587.17) |
| Mar 2021 | | | 410.75 | 378.12 | * | Lender Placed Hazard | 5,619.91 | (57,965.29) |
| Mar 2021 | | | 810.75 | 270.25 | * | PMI | 4,809.16 | (58,235.54) |
| Mar 2021 | | | | 410.75 | * | Lender Placed Flood | 4,809.16 | (58,646.29) |
| Mar 2021 | | | | 301.04 | * | Lender Placed Flood | 4,809.16 | (58,947.33) |
| Apr 2021 | 2,094.16 | | 312.09 | 307.79 | * | Lender Placed Flood | 6,591.23 | (59,255.12) |
| Apr 2021 | | | 410.75 | 405.13 | * | Lender Placed Hazard | 6,180.48 | (59,660.25) |
| Apr 2021 | | | 810.75 | 270.25 | * | PMI | 5,369.73 | (59,930.50) |
| May 2021 | 2,094.16 | | 312.09 | | * | Lender Placed Flood | 7,151.80 | (59,930.50) |
| May 2021 | | | 410.75 | | * | Lender Placed Hazard | 6,741.05 | (59,930.50) |
| May 2021 | | | 810.75 | 270.25 | * | PMI | 5,930.30 | (60,200.75) |
| Jun 2021 | 2,094.16 | | 312.09 | 312.09 | * | Lender Placed Flood | 7,712.37 | (60,512.84) |
| Jun 2021 | | | 410.75 | 410.75 | | Lender Placed Hazard | 7,301.62 | (60,923.59) |
| Jun 2021 | | | 810.75 | 270.25 | * | PMI | 6,490.87 | (61,193.84) |
| Jun 2021 | | | | 405.13 | * | Lender Placed Hazard | 6,490.87 | (61,598.97) |
| Jun 2021 | | | | 307.79 | * | Lender Placed Flood | 6,490.87 | (61,906.76) |
| Jul 2021 | 2,094.16 | | 312.09 | | * | Lender Placed Flood | 8,272.94 | (61,906.76) |
| Jul 2021 | | | 410.75 | | * | Lender Placed Flood | 7,862.19 | (61,906.76) |
| Jul 2021 | | | 810.75 | 270.25 | * | PMI | 7,051.44 | (62,177.01) |
| Aug 2021 | 2,094.16 | | 312.09 | 312.09 | * | Lender Placed Flood | 8,833.51 | (62,489.10) |
| Aug 2021 | | | 410.75 | 410.75 | | Lender Placed Hazard | 8,422.76 | (62,899.85) |
| Aug 2021 | | | 810.75 | 270.25 | * | PMI | 7,612.01 | (63,170.10) |
| Sep 2021 | 2,094.16 | | 312.09 | 312.09 | * | Lender Placed Flood | 9,394.08 | (63,482.19) |
| Sep 2021 | | | 410.75 | 410.75 | | Lender Placed Hazard | 8,983.33 | (63,892.94) |
| Sep 2021 | | | 810.75 | 270.25 | * | PMI | 8,172.58 | (64,163.19) |
| Sep 2021 | | | | 405.13 | * | Lender Placed Hazard | 8,172.58 | (64,568.32) |
| Sep 2021 | | | | 307.79 | * | Lender Placed Flood | 8,172.58 | (64,876.11) |
| Oct 2021 | 2,094.16 | | 312.09 | | * | Lender Placed Flood | 9,954.65 | (64,876.11) |
| Oct 2021 | | | 410.75 | | * | Lender Placed Hazard | 9,543.90 | (64,876.11) |
| Oct 2021 | | | 810.75 | 270.25 | * | PMI | 8,733.15 | (65,146.36) |

| Nov 2021 | 2,094.16 |  | 6,726.89 |  |  | County Tax | 4,100.42 | (65,146.36) |
| Nov 2021 |  |  | 312.09 | 312.09 |  | Lender Placed Flood | 3,788.33 | (65,458.45) |
| Nov 2021 |  |  | 410.75 | 410.75 |  | Lender Placed Hazard | 3,377.58 | (65,869.20) |
| Nov 2021 |  |  | 810.75 |  | * | PMI | 2,566.83 | (65,869.20) |
|  |  |  |  |  |  | Anticipated Transactions | 2,566.83 | (65,869.20) |
| Nov 2021 |  |  |  |  |  |  |  | (65,869.20) |
|  | $18,847.44 |  | $0.00 P | $20,529.20 | $8,569.30 |  |  |  |

**An asterisk (\*) indicates a difference from a previous estimate either in the date or the amount . If you want a further explanation, please call our toll -free number.**

**P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown .**

Shellpoint Mortgage Servicing
For Inquiries:  (800) 365-7107

| | | | | Analysis Date: | | November 05, 2021 |
| | | | | Loan: | | |

## Annual Escrow Account Disclosure Statement - Projections for Coming Year

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account

| Date | Anticipated Payments | | Description | Escrow Balance | |
| | To Escrow | From Escrow | | Anticipated | Required |
|------|-----------|-------------|-------------|-------------|----------|
| | | | Starting Balance | 0.00 | 10,655.45 |
| Dec 2021 | 1,587.62 | 270.25 | PMI | 1,317.37 | 11,972.82 |
| Dec 2021 | | 316.49 | Lender Placed Flood | 1,000.88 | 11,656.33 |
| Dec 2021 | | 416.05 | Lender Placed Hazard | 584.83 | 11,240.28 |
| Dec 2021 | | 416.05 | Lender Placed Flood | 168.78 | 10,824.23 |
| Dec 2021 | | 316.49 | Lender Placed Flood | (147.71) | 10,507.74 |
| Dec 2021 | | 7,017.94 | County Tax | (7,165.65) | 3,489.80 |
| Dec 2021 | | 270.25 | PMI | (7,435.90) | 3,219.55 |
| Jan 2022 | 1,587.62 | 270.25 | PMI | (6,118.53) | 4,536.92 |
| Jan 2022 | | 316.49 | Lender Placed Flood | (6,435.02) | 4,220.43 |
| Jan 2022 | | 416.05 | Lender Placed Hazard | (6,851.07) | 3,804.38 |
| Feb 2022 | 1,587.62 | 270.25 | PMI | (5,533.70) | 5,121.75 |
| Feb 2022 | | 316.49 | Lender Placed Flood | (5,850.19) | 4,805.26 |
| Feb 2022 | | 416.05 | Lender Placed Hazard | (6,266.24) | 4,389.21 |
| Mar 2022 | 1,587.62 | 270.25 | PMI | (4,948.87) | 5,706.58 |
| Mar 2022 | | 316.49 | Lender Placed Flood | (5,265.36) | 5,390.09 |
| Mar 2022 | | 416.05 | Lender Placed Hazard | (5,681.41) | 4,974.04 |
| Apr 2022 | 1,587.62 | 270.25 | PMI | (4,364.04) | 6,291.41 |
| Apr 2022 | | 316.49 | Lender Placed Flood | (4,680.53) | 5,974.92 |
| Apr 2022 | | 416.05 | Lender Placed Hazard | (5,096.58) | 5,558.87 |
| May 2022 | 1,587.62 | 270.25 | PMI | (3,779.21) | 6,876.24 |
| May 2022 | | 316.49 | Lender Placed Flood | (4,095.70) | 6,559.75 |
| May 2022 | | 416.05 | Lender Placed Hazard | (4,511.75) | 6,143.70 |
| Jun 2022 | 1,587.62 | 270.25 | PMI | (3,194.38) | 7,461.07 |
| Jun 2022 | | 316.49 | Lender Placed Flood | (3,510.87) | 7,144.58 |
| Jun 2022 | | 416.05 | Lender Placed Hazard | (3,926.92) | 6,728.53 |
| Jul 2022 | 1,587.62 | 270.25 | PMI | (2,609.55) | 8,045.90 |
| Jul 2022 | | 316.49 | Lender Placed Flood | (2,926.04) | 7,729.41 |
| Jul 2022 | | 416.05 | Lender Placed Hazard | (3,342.09) | 7,313.36 |
| Aug 2022 | 1,587.62 | 270.25 | PMI | (2,024.72) | 8,630.73 |
| Aug 2022 | | 316.49 | Lender Placed Flood | (2,341.21) | 8,314.24 |
| Aug 2022 | | 416.05 | Lender Placed Hazard | (2,757.26) | 7,898.19 |
| Sep 2022 | 1,587.62 | 270.25 | PMI | (1,439.89) | 9,215.56 |
| Sep 2022 | | 316.49 | Lender Placed Flood | (1,756.38) | 8,899.07 |
| Sep 2022 | | 416.05 | Lender Placed Hazard | (2,172.43) | 8,483.02 |
| Oct 2022 | 1,587.62 | 270.25 | PMI | (855.06) | 9,800.39 |
| Oct 2022 | | 316.49 | Lender Placed Flood | (1,171.55) | 9,483.90 |
| Oct 2022 | | 416.05 | Lender Placed Hazard | (1,587.60) | 9,067.85 |
| Nov 2022 | 1,587.62 | 270.25 | PMI | (270.23) | 10,385.22 |
| Nov 2022 | | 316.49 | Lender Placed Flood | (586.72) | 10,068.73 |
| Nov 2022 | | 416.05 | Lender Placed Hazard | (1,002.77) | 9,652.68 |
| Nov 2022 | | 7,017.94 | County Tax | (8,020.71) | 2,634.74 |
| | $19,051.44 | $27,072.15 | | | |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year)

Your ending balance from the last month of the account history (escrow balance anticipated) is (0.00).  Your starting
balance (escrow balance required) according to this analysis should be $10,655.45.  This means you have a shortage of 10,655.45.
This shortage may be collected from you over a period of 12 months or more unless the shortage is less than 1 month's
deposit, in which case we have the additional option of requesting payment within 30 days.  We have decided to do nothing.
We anticipate the total of your coming year bills to be 27,072.15.  We divide that amount by the number of payments expected during the coming year
to obtain your escrow payment.

| New Escrow Payment Calculation | |
|---|---|
| Unadjusted Escrow Payment | $1,587.62 |
| Surplus Reduction: | $0.00 |
| Shortage Installment: | $0.00 |
| Rounding Adjustment Amount: | $0.00 |
| Escrow Payment: | $1,587.62 |

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt please be advised that this notice is to advise you of the status of your mortgage loan This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Information Request, please write to us at the following address

Shellpoint Mortgage Servicing
PO Box 10826
Greenville, SC 29603 0826

✂ Detach Here




Shellpoint
Mortgage Servicing
Shellpoint Mortgage Servicing
PO Box 10826

Greenville, SC 29603 0826
(800) 365-7107

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

**Escrow Shortage Reply (This is not a bill)**

Loan Number:                    ▮▮▮▮▮▮

Full Shortage Amount:           $10,655.45

Payment Amount:      $ _____

Your escrow shortage has been spread over 0 months, resulting in an additional increase in your monthly payment in the amount of 0.00.

IF YOU CHOOSE to pay your shortage in full, please visit www.ShellpointMtg.com in order to expedite your payment. You can also mail this coupon with your remittance of the full shortage amount to the address to the left

Investor Account #

When Recorded Return To:
Green Tree Servicing LLC
7360 South Kyrene Road
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

7360 S Kyrene, Tempe, AZ 85283

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA]

Safeact from Inc **LOAN MODIFICATION AGREEMENT**

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE CURRENTLY
IN BANKRUPTCY OR YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A
REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS
YOUR PERSONAL LIABILITY.**

This Loan Modification Agreement ("Agreement"), made between SAMUEL H.
WORRELL and DONNA L. WORRELL ("Customer") and Green Tree Servicing LLC ("Lender"), amends and
supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment
Rewards Rider, if any, dated 01/23/2006 and recorded 02/02/2006 Book 41390 Page 825
of the Deputy Clerk Records of Broward County, FL and (2) the Note, bearing the same
date as, and secured by, the Security Instrument, which covers the real and personal property described in the
Security Instrument and defined therein as the "Property", located at

7420 NW 41ST CT LAUDERHILL, FL 33319 New Modified Amt $433,549.99 Unpaid Principal Balance $261,104.37
New Money $172,445.62

ORIGINAL

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows
(notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 11/01/2014, the amount payable under the Note and the Security Instrument (the "New Principal
Balance") is U.S. $433,549.99 consisting of the unpaid amount(s) loaned to Customer by Lender plus any
interest and other amounts capitalized.

2. $130,065.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and
Customer will not pay interest or make monthly payments on this amount. The New Principal Balance less
the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this
amount is $303,484.99. Interest will be charged on the Interest Bearing Principal Balance at the yearly
rate of 4.50000%, from 11/01/2014. Customer promises to make monthly payments of principal and
interest of U.S. $1,364.36, beginning on the 12/01/2014, and continuing thereafter on the same day of
each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have
been paid in full. The yearly rate of 4.50000% will remain in effect until the Interest Bearing Principal
Balance and all accrued interest thereon have been paid in full. The new monthly payment amount does
not include any amounts owed for escrow. Customer may refer to the monthly billing statement for the
escrow amount owed. The new Maturity Date will be 11/01/2054. Customer's payment schedule for the
modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-40 | 4.500% | 11/01/2014 | $1,364.36 | $785.17 adjusts annually after year 1 | $2,149.53 adjusts annually after year 1 | 12/01/2014 | 480 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

3. Customer agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Customer sells or transfers an interest in the Property, (ii) the date Customer pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Customer makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Customer is not a natural person and a beneficial interest in Customer is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Customer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Customer must pay all sums secured by the Security Instrument. If Customer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Customer.

Customer understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Customer acknowledges that Lender is required to report any debt forgiveness to the Internal Revenue Service which may result in consequences regarding Customer's federal, state or local tax liability. In addition, Customer understands that if Customer receives public assistance, the forgiveness of debt may affect Customer's eligibility for these benefits. Customer acknowledges that Lender cannot provide any advice or guidance regarding possible tax consequences or effect on any public assistance benefits. Customer further acknowledges that Lender has advised that Customer may wish to consult with a tax professional about any possible tax consequences and/or their public assistance office regarding other consequences that may result from the forgiveness of debt.

(f) Customer agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Customer.

(g) Customer authorizes Lender, and Lender's successors and assigns, to share certain Customer public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Customer's account balances and activity, with an authorized third Agency or similar entity that is assisting Customer in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Customer's account ("Authorized Third Party").

Customer understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Customer's account), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Customer's account, to any insurer, guarantor, or servicer that insures, guarantees, or services Customer's account or any other mortgage account secured by the Property on which Customer is obligated, or to any companies that perform support services to them in connection with the account or any other mortgage account secured by the Property on which Customer is obligated.

Customer consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Customer's account.

6.By this paragraph, Lender is notifying customer that any prior waiver by Lender of Customer's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Customer has been advised of amount needed to fund the escrow items.

Customer will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Customer shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Customer shall pay Lender the Funds for Escrow Items unless Lender waives Customer's obligation to pay the Funds for any or all Escrow Items. Lender may waive Customer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Customer shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Customer's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If Customer is obligated to pay Escrow Items directly, pursuant to a waiver, and Customer fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and Customer shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Account Documents, and, upon such revocation, Customer shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Customer for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Customer interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Customer any interest or earnings on the Funds. Lender and Customer can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Customer, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to Customer any Funds held by Lender.

7. Customer also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Customer's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Customer is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Customer waives any Timely Payment Rewards rate reduction to which Customer may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

8. Customer understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Customer agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC
Lender
By:

Susanne F. Roman
Licensed Loss Mitigation Specialist
By License Number: 820539
Name: Anita L. Garvin
Title: Director, Default Services
License #: 1002252

NOV 1 7 2014

Date

Samuel H. Worrell

Date

Donna L. Worrell

Date

Account#: ▮▮▮▮

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENTS] _____

STATE OF Florida ,

County ss: Broward

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared

Samuel H. Worrell and Donna L. Worrell

who is personally known to me or who has produced Florida Driverlicense as positive identification, and who executed the foregoing instrument and acknowledged before me that executed the same for the purpose therein expressed.

WITNESS my hand and official seal in the county and state aforesaid this _____ day of 7th July , 2014

My Commission Expires: _____

Notary Public

BRISEIDA DEFRAN
Notary Public - State of Florida
My Comm. Expires Jul 23, 2015
Commission # EE 92573
Bonded Through National Notary Assn.

ACKNOWLEDGMENT

STATE OF: Arizona,

County ss: Maricopa,

On this day of _____ NOV 1 7 2014 _____, before me, the undersigned, a Notary
Public in and for said state, personally appeared

Susanne F. Roman, Licensed Loss Mitigation Specialist of Green Tree Servicing LLC

Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument.

Donna K Gillane

Notary Public

Donna K Gillane
Notary Public - Arizona
Maricopa County
My Commission Expires
June 9, 2018

LEGAL DESCRIPTION- EXHIBIT "A"

Lot 6, Block 1, of BOULEVARD NORTH according to the Plat thereof
recorded in Plat Book 92, Page 18 of the Public Records of BROWARD
County, Florida.

PIN:

Prepared by: ELIN BRITO

LOAN #:

# ADJUSTABLE RATE NOTE
### (MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

JANUARY 23, 2006      BOCA RATON      FLORIDA
[Date]      [City]      [State]

7420 NW 41ST CT, LAUDERHILL, FL 33319-3902
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 337,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed 115 percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of 7.250 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of 2.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of MARCH, 2006 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 575/1000 percentage point(s) 3.575 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on MARCH 01, 2006 . I will make these payments every month until I have paid all the Principal and interest and any other

* Florida PayOption ARM Note - MTA index
2E318-FL (09/05)(d)      Page 1 of 4

LOAN #:

charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 01, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

P.O. Box 660694, Dallas, TX 75266-0694

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,333.53 , unless adjusted under Section 3(F).

### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first day of MARCH, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

### (E) Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

### (G) Required Full Payment

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

### (H) Payment Options

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

  (i)  Interest Only Payment: the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

  (ii)  Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

  (iii)  15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

### 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

● Florida PayOption ARM Note - MTA Index
2E318-FL (09/05)

LOAN # :

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.    DOCUMENT TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

SAMUEL A. WORRELL                          1/23/06
                                            -Borrower

DONNA L. WORRELL                           1/23/06
                                            -Borrower

_____
                                            -Borrower

_____
                                            -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
Countrywide Home Loans, Inc., a New York Corporation
Doing Business as America's Wholesale Lender

BY
David A. Spector
Managing Director

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
This document was prepared by:
ELIN BRITO

AMERICA'S WHOLESALE LENDER

800 FAIRWAY DRIVE #100
DEERFIELD BEACH
FL 33441

INSTR # 105751348
OR BK 41390 Pages 825 - 842
RECORDED 02/02/06 16:03:47
BROWARD COUNTY COMMISSION
DOC STMP-M: $1181.25
INT TAX: fl $675.00
DEPUTY CLERK 3075
#1, 18 Pages

——————[Space Above This Line For Recording Data]——————



[Doc ID #]

# MORTGAGE
MIN



## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  JANUARY 23, 2006        , together with all Riders to this document.
(B) "Borrower" is
SAMUEL H WORRELL, AND DONNA L WORRELL, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(E) "Note" means the promissory note signed by Borrower and dated  JANUARY 23, 2006       . The Note states that Borrower owes Lender
THREE HUNDRED THIRTY SEVEN THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 337,500.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  FEBRUARY 01, 2036       .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11

-6A(FL) (0005)   CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291                    Form 3010 1/01
CONV/VA

DOC ID #:

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

| COUNTY | of | BROWARD | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

DOC ID #:

which currently has the address of

Parcel ID Number:

7420 NW 41ST CT, LAUDERHILL

[Street/City]

Florida 33319-3902 ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

DOC ID #:

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

DOC ID #: ▓▓▓▓

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

DOC ID #:

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

DOC ID #:

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

DOC ID #:

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless

DOC ID #:

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to

DOC ID #:

which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

DOC ID #:

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____                              _____ (Seal)
Michael McIntosh                                             SAMUEL H. WORRELL          -Borrower
                                                             7420 NW 41ST COURT
                                                             FORT LAUDERDALE, FL 33319     (Address)

_____                              _____ (Seal)
Robert Abreu                                                 DONNA L. WORRELL          -Borrower
                                                             7420 NW 41ST COURT
                                                             FORT LAUDERDALE, FL 33319     (Address)

                                                             _____ (Seal)
                                                                                       -Borrower

                                                                                          (Address)

                                                             _____ (Seal)
                                                                                       -Borrower

                                                                                          (Address)

**STATE OF FLORIDA,**                                     Broward                    **County ss:**
The foregoing instrument was acknowledged before me this   1/23/06                              by
Samuel   H. Worrell  and  Donna  L. Worrell

_____

_____

who is personally known to me or who has produced   DRIVER LICENSE   as identification.

Michael McIntosh
Commission# DD238987
Expires: Sep. 14, 2007
Bonded Thru
Atlanta Bonding Co., Inc.                    _____
                                             Notary Public

Prepared by: ELIN BRITO

## AMERICA'S WHOLESALE LENDER

Branch #:
800 FAIRWAY DRIVE #100
DATE:     01/23/2006             DEERFIELD BEACH, FL 33441
CASE #:                         Phone: (954)420-1100
DOC ID #:                    Br Fax No.: (877)585-3357
BORROWER:  SAMUEL H. WORRELL
PROPERTY ADDRESS: 7420 NW 41ST CT
                 LAUDERHILL, FL 33319-3902

## LEGAL DESCRIPTION EXHIBIT A

Lot 6, Block 1, of BOULEVARD NORTH according to the Plat thereof recorded in Plat Book 92, Page 18 of the Public Records of BROWARD County, Florida.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)

# ADJUSTABLE RATE RIDER
**(PayOption MTA Twelve Month Average Index - Payment Caps)**

[Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this TWENTY-THIRD       day of
JANUARY, 2006       , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and
located at:
7420 NW 41ST CT
LAUDERHILL, FL 33319-3902
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

* PayOption MTA ARM Rider
1E310-XX (09/05)(d)                    Page 1 of 6

DOC ID #: [redacted]

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of        7.250 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of        2.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first                        day of MARCH, 2006        , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding              THREE & 575/1000 percentage point(s) (      3.575 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than        9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

**• PayOption MTA ARM Rider**
**1E310-XX (09/05)**                        Page 2 of 6

DOC ID #:

I will make my monthly payments on the FIRST                    day of each month
beginning on March, 2006          . I will make these payments every month until I have
paid all the Principal and interest and any other charges described below that I may owe under the
Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on FEBRUARY 01, 2036      , I still owe amounts under the Note, I will pay
those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of
U.S. $ 1,333.53               , unless adjusted under Section 3 (F).

### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the
first          day of MARCH, 2007          , and on that day every 12th
month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment
which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If
the Minimum Payment is not sufficient to cover the amount of the interest due then negative
amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment
Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of
the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe
at the Payment Change Date in full on the maturity date in substantially equal payments at the interest
rate effective during the month preceding the Payment Change Date. The result of this calculation is
called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment
effective on a Payment Change Date, will not increase by more than     7.500%  of my prior
monthly payment. This      7.500% limitation is called the "Payment Cap." This Payment Cap
applies only to the Principal and interest payment and does not apply to any escrow payments Lender
may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the
amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying
it by the number       1.075 . The result of this calculation is called the "Limited Payment." Unless
Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be
the lesser of the Limited Payment and the Full Payment.

**\* PayOption MTA ARM Rider**
**1E310-XX (09/05)**                     Page 3 of 6

DOC ID #:

#### (E) Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

#### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

#### (G) Required Full Payment

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

#### (H) Payment Options

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

* PayOption MTA ARM Rider
1E310-XX (09/05)                     Page 4 of 6

DOC ID #: ▮

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

● **PayOption MTA ARM Rider**
1E310-XX (09/05)               Page 5 of 6

DOC ID #:

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

SAMUEL H. WORRELL                                         -Borrower
7420 NW 41ST COURT
FORT LAUDERDALE, FL 33319

DONNA L. WORRELL                                          -Borrower
7420 NW 41ST COURT
FORT LAUDERDALE, FL 33319

_____                    -Borrower

_____                    -Borrower

• PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 6 of 6

This space is for recording purposes only

Prepared by:     DAVID J. STERN, ESQ
Record & Return to:   900 South Pine Island Road Suite 400
                Plantation, FL 33324-3920
                09-51174(CWF)(FNMA)

## ASSIGNMENT OF MORTGAGE

### KNOW ALL MEN BY THESE PRESENTS:

*THAT* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Residing or located at c/o COUNTRYWIDE HOME LOANS, INC., 7105 CORPORATE DRIVE, MAIL STOP PTX-B-35, PLANO, TX 75024, herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto BAC HOME LOANS SERVICING, L.P. F/K/A COUNTRYWIDE HOME LOANS SERVICING, L.P. residing or located at: C/O COUNTRYWIDE HOME LOANS, INC., 7105 CORPORATE DRIVE, MAIL STOP PTX-B-35, PLANO, TX 75024 herein designated as the assignee, the mortgage executed by SAMUEL H. WORRELL, AND DONNA L. WORRELL, HUSBAND AND WIFE recorded in BROWARD County, Florida at book 41390 and page 825 encumbering the property more particularly described as follows:

LOT 6, BLOCK 1, OF BOULEVARD NORTH, ACCORDING TO PLAT THEREOF RECORDED IN PLAT BOOK 92 PAGE 18 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

together with the note and each and every other obligation described in said mortgage and the money due and to become due thereon

TO HAVE AND TO HOLD the same unto the said assignee, its successors and assigns forever, but without recourse on the undersigned.

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed , this ___ day of _____ 2009, but effective as of the 3rd day of June, 2009.                                 AUG 1 1 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(CORPORATE SEAL)

ATTEST:
WITNESS:

Print Name: _____

WITNESS: #1

Print Name: DENISE Cooper

BY: _____
PRINT NAME: _____
TITLE: Mary Kist  Vice President

STATE OF   Texas
COUNTY OF   COLLIN

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on this the ___ day of AUG 1 1 2009 2009, within my jurisdiction, the within named  Mary Kist  who is personally known to me and who acknowledged to me that (s)he is  Vice Pres  and that for and on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and as its act and deed (s)he executed the above and foregoing instrument, after first having been duly authorized by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. to do so.

WITNESS my hand and official seal in the County and State last aforesaid this ___ day AUG 1 1 2009 , 2009.

Azfar Siddiqui
Notary Public
STATE OF TEXAS
My Comm. Exp. Nov. 18, 2010

NOTARY PUBLIC

Recording Requested By:
**Bank of America**
Prepared By: Anne-Marie Calderon
800-444-4302

When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID#
Property Address:
7420 NW 41st Ct
Lauderhill, FL 33319-3902

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **GREEN TREE SERVICING LLC** whose address is **7360 S. KYRENE ROAD, TEMPE, AZ 85283** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Original Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER |
| Original Borrower(s): | SAMUEL H WORRELL, AND DONNA L WORRELL, HUSBAND AND WIFE |
| Date of Mortgage: | 1/23/2006 |
| Original Loan Amount: | $337,500.00 |

Recorded in **Broward County, FL** on: **2/2/2006**, book **OR 41390**, page **825** and instrument number **105751348**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
**OCT 1 8 2013**

**Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing LP**

By.

Mehrdad Abedinzadeh
Assistant Vice President

Witness: Rheanna Hightower

By.

Glenda Chavez
Assistant Vice President

Witness: Antranik Markarian

State of California
County of **LOS ANGELES**

On **OCT 1 8 2013** before me, **Erica Gonzalez** , Notary Public, personally appeared **Mehrdad Abedinzadeh** and **Glenda Chavez** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Erica Gonzalez
My Commission Expires: June 19, 2015

(Seal)

ERICA GONZALEZ
Commission # 1937891
Notary Public - California
Los Angeles County
My Comm. Expires Jun 19, 2015

When Recorded Return To:
Ditech Financial LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

**Prior#**
**Custodian#**

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 2100 E. ELLIOT RD., BLDG 94, Mailstop T314, TEMPE, AZ 85284, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **NEW RESIDENTIAL MORTGAGE LLC, WHOSE ADDRESS IS 1345 AVENUE OF THE AMERICAS, 45th FLOOR, NEW YORK, NY 10105 (212)798-6100, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage was made by **SAMUEL H WORRELL AND DONNA I. WORRELL** and recorded in Official Records of the Clerk of the Circuit Court of **BROWARD** County, **Florida**, in **Book 41390 and Page 825**, upon the property situated in said State and County as more fully described in said Mortgage.

**Dated this 26th day of February in the year 2020**
**DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC**

_Tiffany Floyd_
**TIFFANY FLOYD**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.



_Hanna Winer_
**HANNA WINER**
**WITNESS**

_Lauren Astle_
**LAUREN ASTLE**
**WITNESS**

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

**Prior#** 
**Custodian#**

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online
notarization on this 26th day of February in the year 2020, by Tiffany Floyd as VICE PRESIDENT of DITECH
FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, who, as such VICE PRESIDENT being authorized
to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally
known to me.

*Julie Martens*

**JULIE MARTENS**
**COMM EXPIRES: 5/22/2022**

JULIE MARTENS
Notary Public - State of Florida
Commission # GG 221059
My Comm. Expires May 22, 2022
Bonded through National Notary Assn.

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Recording Requested By:
**Shellpoint Mortgage Servicing**
Prepared By: **Ratanaphone Vilaylueth**
**855-369-2410**
When recorded mail to:
**CoreLogic**
**P.O. Box 9232**
**Coppell, TX 75019**

Property Address:
**7420 NW 41ST CT**
**LAUDERHILL, FL 33319**

This space for Recorder's use

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1345 AVENUE OF THE AMERICAS, 45TH FLOOR, NEW YORK, NY 10105** does hereby grant, sell, assign, transfer and convey unto **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING** whose address is **1345 AVENUE OF THE AMERICAS, 45TH FLOOR, NEW YORK, NY 10105** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Mortgagee: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS** |
| Original Borrower(s): | **SAMUEL H WORRELL, AND DONNA L WORRELL, HUSBAND AND WIFE** |
| Date of Mortgage: | **1/23/2006** |
| Original Loan Amount: | **$337,500.00** |

Recorded in **Broward County, FL** on: **2/2/2006**, book **OR 41390**, page **825** and instrument number **CFN 105751348**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on **4/14/2020**

**NEW RESIDENTIAL MORTGAGE, LLC BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT**

By: _____

Witness: Lewis Wilson

**Audrey B Trumble**
**Vice President**

STATE OF **TX**

COUNTY OF **Dallas**

The foregoing instrument was acknowledged before me by means of [**X**] physical presence or [ ] online notarization, on this **4/14/2020** , by **Audrey B Trumble** as **Vice President** for **NEW RESIDENTIAL MORTGAGE, LLC BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT** who is personally known to me or who has produced _____ as identification.

_____
Signature of Notary Public

TINA KAYE SANDOR-PROVENCHER
COMM #13106592-4
NOTARY PUBLIC - TX
CITY OF IRVING
DALLAS COUNTY
EXPIRES 3/30/2021

Name of Notary Public: **Tina Kaye Sandor-Provencher**
Notary Commission Expires Date: **3/30/2021**
Personally Known: _____X_____
OR Produced Identification: _____
Type of Identification Produced: _____

## CERTIFICATE OF SERVICE

 **I HEREBY CERTIFY** that on January 6, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and a true and correct copy has been served via United States Mail to the following:

SAMUEL FITZGERALD WORRELL
7420 NW 41 COURT
LAUDERHILL, FL 33319

And via electronic mail to:

ROBIN R WEINER
POB 559007
FORT LAUDERDALE, FL 33355

OFFICE OF THE US TRUSTEE
51 S.W. 1ST AVE.
SUITE 1204
MIAMI, FL 33130

       Robertson, Anschutz, Schneid, Crane &
       Partners, PLLC
       10700 Abbott's Bridge Road, Suite 170
       Duluth, GA 30097
       Telephone: 470-321-7112
       By: /s/Quintauris Lindsey
       Quintauris Lindsey
       Email: qlindsey@raslg.com